Oh yay, oh yay, oh yay. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Bowie presiding along with Justice Cate and Justice Barberis. The first case this morning is 522-0143, First Midwest Bank v. Allen et al. Arguing for the appellant is John Allen Jr. Arguing for the appellee, First Midwest Bank, is Adam Price. Arguing for the appellee, United States of America, is David Hoff. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. The appellees have agreed to split their time to 13 minutes and 2 minutes with Mr. Price going first. Please note only the clerk of the court is permitted to record these proceedings. Good morning, counsel. I understand we've had some Zoom issues. I hope we can get those resolved. If for any reason we do have an issue show up, I'll try to stop if we have that, and we'll make sure everybody has sufficient time. I know there were two motions filed by Mr. Allen, and I think responses were received yesterday or the day before. We are going to take those, obviously, with the case, and we will deal with those in our order. I believe the motions and the responses are sufficient, and we're not going to need a reply to those. I will do my best, Mr. Price and Mr. Hoff, to watch time, but I'm going to also lean on you all to look at your time so you don't run out before Mr. Hoff gets his time. With all that being said, Mr. Allen, are you ready to proceed? I am, Your Honor. Thank you. Then go right ahead. May it please the court and counsel, today I have one major point to stress. The bank's debt collection activity should have ended in 2012 with the bank fully paid. Instead, the bank gamed the court system and gave away its claims against the Allens. Now the bank wants this court to rescue the bank's deliberately abandoned mortgage. This appeal is from a denied Section 214-01F petition, and that petition asked to void two orders. The first order was a final 2012 foreclosure judgment against the Allens' marital home at 38 Maywood Drive in Danville, Illinois. The second order vacated that foreclosure judgment in 2016. I will focus on the vacatur order. Most important, the bank intended the vacatur order to reinstate the John Allen 2010 note-based debt. The bank knew that John Allen's Chapter 7 bankruptcy court had joined the bank for reinstating its 2010 note. The bank couldn't even ask the trial court to reinstate the 2010 note against John Allen, so the vacatur order did not reinstate the 2010 note, directly or indirectly. If the bank successfully had vacated the foreclosure judgment, the bank still cannot now enforce it. The bank has no reinstated 2010 note, so the bank has no claims to enforce against the Allens in their second mortgage foreclosure suit in 2018. To begin, in 2010, the bank loaned the Allens $104,000 evidenced by the bank's 2010 note and secured by the bank's 2010 first mortgage on 38 Maywood. In 2011, the bank participated in John Allen's Chapter 7 bankruptcy, claiming about $115,000. In January 2012, the bank appraised the 38 Maywood market value at about $200,000. So the bank loan could have been paid in full in 2012 through a bankruptcy managed sale at 38 Maywood. But with that $200,000 appraisal in hand, the bank abandoned the John Allen Chapter 7 proceeding. Instead, the bank sought non-bankruptcy NREM remedies in its 2012 Illinois mortgage foreclosure law action. On May 11, 2012, the trial court granted the bank its foreclosure judgment. At the bank's request on May 11, 2012, the 2012 trial court entered a Rule 304A finding that the foreclosure judgment was final. The bank's rights to its 2010 note instantly merged into the foreclosure judgment and terminated. Thus, the bank's only rights under the 2010 note were as provided in the foreclosure judgment. On July 31, 2012, the Allens filed their notice of appeal from that foreclosure judgment. On August 2, the Allen appeal became effective. The Allens never filed an appeal bond to the Allen appeal. So the Allen appeal did not stay enforcement of the foreclosure judgment. Without that stay, the trial court had continuing authority to enforce but not vacate the foreclosure merger during the appeal. And the bank had scheduled judicial sale of 38 Maywood on September 20, 2012. On September 10, John Allen filed an action for Chapter 13 bankruptcy relief. Filing the Chapter 13 action automatically stayed the bank's scheduled sale of 38 Maywood. Three years later, on November 15, 2015, at the bank's request, the Chapter 13 court lifted the automatic state. This permitted First Midwest Bank to immediately sell 38 Maywood and at the same time to defend against the Allens appeal. But five months later, on April 20, 2016, the bank reversed its litigation strategy. The bank moved the fourth district appellate court to dismiss the Allen appeal as moot. The bank said in 2016, without citing authority, that it was obliged to vacate the judgment of foreclosure and dismissed the bank's foreclosure action. Obliged to vacate. The bank's supporting affidavit swore that the bank's purpose in vacating the judgment was to return the Allens file to active status. In other words, the bank then wanted to abandon its foreclosure judgment and to reinstate its 2010 note. This is a remarkable change at heart after five years of litigation. On July 14, the appellate court entered its mandate stating only that, quote, it is the decision of this court that the appeal be and the same is hereby dismissed, end quote. The appellate court mandate said nothing about reinstating the 2010 note. On June 16, 2016, the bank moved the trial court to vacate the final foreclosure judgment. The bank motion only requested that the court vacate the foreclosure judgment and dismiss the foreclosure action. The bank motion did not even ask the court to reinstate the bank's 2010 note. Thus, in 2016, the bank intended the vacatur order to reinstate the 2010 note. Now, we know that and the bank admitted even asking the trial court for the reinstatement language in the vacatur order. And we know that intent because in their bank's 2018 foreclosure complaint, it expressly alleged John Allen's personal responsibility for payment of his discharged 2010 note debt to the bank. And also confirming that intent, the bank's second amended complaint in the 2018 action swore that, quote, attached as exhibit B as a copy of the note secured thereby at all subsequent modifications herein collectively the note, end quote. That meant that the note that they're trying to collect was basically reinstated in that complaint. And the second amended complaint did not disclose to the 2018 court that John Allen had been a substantial, very substantial modification. On July 21, 2016, the bank did not and legally could not expressly ask the trial court to reinstate the bank's 2010 note as to John Allen. The bank knew that John Allen was discharged from his personal 2010 note debt. The bank also knew that John Allen's bankruptcy discharge and joined the bank from committing any act to collect that discharged personal debt. Just asking the trial court to reinstate the 2010 note would be just such an act violating the injunction. But the bank still intended the vacatur order to imply reinstatement of the 2000 note. Therefore, the bank's vacatur motion by itself violated the federal bankruptcy law injunction. The trial court and the petition court cannot have intended to condone and implement the bank violation of 11 USC section 524A2, which is their injunction against any act trying to collect it after the discharge. Not knowing the bank's true illegal intent, the trial court entered two orders in one sentence. Quote, the judgment of foreclosure entered on May 11, 2012 is vacated and the plaintiff's complaint is dismissed. The trial court did not reinstate the bank's 2010 note. So even if the trial court had authority to enter the vacatur order, the bank still has no reinstated 2010 note. That's because the vacatur order did not expressly reinstate the note and the Allen's are unaware of any Illinois mortgage foreclosure law provision which allows automatic reinstatement of the 2010 note after the bank's vacation of the foreclosure judgment. Automatic reinstatement of the bank's 2010 note against John and Marguerite Allen would be void as a bank act to reinstate John Allen's discharged bank debt. So therefore, it seems to us that the bank has pleaded itself out of court. If, as the Allen brief argues, the vacatur order is void, the foreclosure judgment remains and the 2010 note and 2010 mortgage lien no longer exist. All the bank's rights against the Allen's are contained in the foreclosure judgment. If, on the other hand, the vacatur order did not and could not reinstate the note or the mortgage lien, if it's valid, it still could not. So on July 21st, 2016, the dismissal order was final and the bank can't reopen the 2010 action to rewrite the vacatur order. And so the bank has no 2010 note and no 2010 mortgage to enforce against the Allen's. And the bank's claims against the Allen's and the bank's 2018 mortgage foreclosure action must therefore be dismissed with prejudice. And I'm sorry. Yes, I have a question for you. I understand that you're arguing the note can't be that the action from 2010 can't be reinstated. But how does that cancel the note? You still have a note out there. Well, the note is out there. But as far as John Allen is concerned, it's void. That's the affirmative defense that you would raise in a proceeding on a foreclosure. Yes, that's true. It would be an affirmative defense in a foreclosure. So how are we? I mean, you filed a 2-1401 in a different proceeding. Isn't that the issue here today? Yes, it is the issue here today. And one of the reasons why it is a void order is simply because the court either didn't have authority to vacate the order because the foreclosure judgment, because the court had no traditional means of reopening the final order. It didn't have section 2-1301E authority. It didn't have section 2-1401 authority. And it didn't have revestment authority. And so what we're trying to show is why the court did not have authority. Well, even though the court may not have had authority, how does that prevent the bank from filing a new action against you in 2018? First, let me get back to what the bank did. In 2018, they tried to sue on an existing mortgage as if it had been reinstated. But as a matter of law in Illinois, the moment that they obtained their final order of foreclosure, the mortgage and the note merged into the judgment. And only the judgment rights were available to the court. So if, as we argue, Your Honor, that the court did not have authority to vacate the judgment foreclosure from 2012, then there is no mortgage. And since the bank is trying to collect on the original reinstated mortgage, and it wasn't reinstated, they have no case. That's all they alleged. Well, I don't understand how you say that it's reinstated because they filed a new action in 2018. But they didn't have a mortgage. They had a note, didn't they? Yes, they had a note and a mortgage. But those merged into the judgment of foreclosure on May 11th of 2012, and they died there. It's called functus officio. It means that those mortgage and the note are no longer in existence, and they are not the basis for any lawsuit. That's bonehead law as far as it goes back for a very long time to the common law. Okay, thank you. That's all I have right now. Thank you very much, Your Honor, for your question. If you have any other questions, I'd be glad to discuss them with you. Well, thank you, Mr. Allen. Before I turn it over to Mr. Price, obviously, Mr. Allen, you'll have your time for rebuttal. Justice Barberas or Justice Cage, do you have any questions at this point for Mr. Allen? Nothing further. No, thank you. All right, thank you. Mr. Price, go right ahead. Thank you, Your Honor. Good morning, and may it please the court and counsel. My name is Adam Price, and I represent First Midwest Bank with respect to this matter. As stated in First Midwest's motion to substitute party respondent, Appley, since the filing of petitioner's 1401 petition, First Midwest merged with and into Old National Bank as set forth in that motion and response, which was just recently filed with this court. First Midwest doesn't dispute the facts set forth by Mr. Allen, but I would like to highlight some other facts. In September 2012, during the pendency of the appeal of the foreclosure judgment entered in that case, Mr. Allen filed a voluntary Chapter 13 bankruptcy. In November of 2015, the bank obtained relief from the automatic bankruptcy stay in that matter. In its motion before the bankruptcy court, the bank acknowledged that Mr. Allen had, through the bankruptcy plan, cured the default which existed at the time he filed the bankruptcy petition. This was also acknowledged in the circuit court's disposal of the Section 214-01 petition, and that's C-264 in the Record on Appeal. In other words, the default which gave rise to the 2012 foreclosure action in the first instance had been cured through the bankruptcy plan. Because of this, the bank- Mr. Price, that was pursuant to the note of 2010? Yes, the 2010 note and mortgage. So the note was recognized in the bankruptcy proceeding in 2015? It had to have been because Mr. Allen made payments pursuant to a confirmed bankruptcy plan. What's the name of the new bank that's taken over? Old National Bank. Have you shown that you properly bought this liability? It wasn't a purchased transaction, Your Honor. It was a merger of First Midwest with and into Old National. But they must have assumed all the liabilities of the First or Midwest Bank. Yes, and that's addressed in our response to Mr. Allen's recent motion in that regard. By operation of law, a merger of one bank into another continues the corporate existence of the existing bank with the new bank. And the new bank assumes, by operation of law, all rights, responsibilities, and liabilities of the previous banks. What do you say about his merger argument? I agree that if the judgment for foreclosure still existed, that generally speaking, a mortgage would merge into a judgment for foreclosure. In other words, a lender cannot have both an existing mortgage and a judgment for foreclosure. So what authority did the bank have to set aside the 2012 final foreclosure order? It was a 304A order. It was a 304A order, Your Honor. I agree that there was a finding of final appealability in that order. However, the Illinois Mortgage Foreclosure Law in Section 1103 provides that the circuit court has continuing authority over the action through the entire pendency of the case. And the Illinois Mortgage Foreclosure Law also statutorily has methods by which a foreclosure dispute or default on a mortgage may be resolved after entry of a judgment for foreclosure. For instance, in Section 1602 of the foreclosure law, the foreclosure law provides a method by which a borrower can reinstate. And in Section 1603, the foreclosure law provides a method by which a borrower can redeem out of the foreclosure. So the argument advanced by the bank in its brief is that it would not make sense logically or under the law as written to sort of bind a bank to a foreclosure judgment that's subsequently been cured. There has to be some mechanism to unwind the foreclosure judgment. And that mechanism is found both in Section 1103 and then Section 1107A of the foreclosure law provides that when in conflict with the General Code of Civil Procedure, the provisions of the foreclosure law prevail. And so generally, I agree. After 30 days, a party seeking relief from a judgment must file a Section 214.01 petition. But the foreclosure law provides methods by which the dispute may be resolved between the entry of judgment and the occurrence of the sale as occurred here. One of those methods that we commonly see is through the filing of a Chapter 13 petition. Under Chapter 13 of the Bankruptcy Code, as we address in our brief, a party up until the occurrence of the sale can petition the Bankruptcy Court to cure the existing default and maintain the loan going forward. And in fact, that's what happened here, Your Honor. Petitioners... Why didn't the bank file a new action instead of trying to vacate the order?  There was a pending appeal in place of the 2012 matter. So what the bank did is it filed a motion to dismiss the appeal as moot. And in that motion, it explained with full transparency to the appellate court the reason for doing so, that the existing default had been cured through Mr. Allen's voluntary and confirmed bankruptcy plan. It then articulated in the motion that the controversy had become moot and it sought not only dismissal of the appeal, but also vacature of the existing foreclosure judgment and dismissal of the case. In response, the appellate court dismissed the appeal. So the bank thereafter went back to the circuit court after the mandate was issued and sought an order vacating the judgment and dismissing the foreclosure because again, the existing default at that point had been cured through Mr. Allen's voluntary bankruptcy plan. Did you vacate as to both Mr. and Mrs. Allen? Yes, the bank sought and it's my understanding that the order did not separate out parties. It simply vacated the judgment for foreclosure and dismissed the action. So if the mortgage and note had merged in 2012 and you received payment pursuant to the bankruptcy proceedings, what basis does the bank now have for bringing a new action in 2018? Well, so our position is that while the judgment existed, the mortgage merged into the judgment of foreclosure. But then once the judgment of foreclosure was vacated, that merger was no longer there. The judgment had been vacated and the case dismissed. And so going back to the sort of factual scenario we have here, Mr. Allen cured the default in his bankruptcy plan. After the judgment was vacated and the existing foreclosure dismissed, Mrs. Allen continued to then throughout 2017 make payments on the loan. A new default did not occur until January 1st, 2018. Once that default occurred, then the bank filed its existing foreclosure action.  That recognized the existence of the mortgage and the note. And I say that with respect to with Mr. Allen's discharge, we recognize he's not personally liable for the debt, but the note doesn't evaporate. It exists, he's just not responsible for the debt personally. The bank can still, of course, enforce the lien, which it's seeking to do through its existing foreclosure action. But who is it going to enforce the lien against if Mr. Allen is not personally liable on the note? It's going to enforce the lien against Mr. Allen and Mrs. Allen's ownership interest in the property. You just told me Mr. Allen had satisfied his obligation under the note. No, not satisfied, Your Honor. He was discharged in bankruptcy, so he's no longer personally liable. In other words, the bank cannot pursue a monetary judgment against him, but has not been satisfied. I'm confused. If the bank can't go against him for money, what can the bank do against him? In its foreclosure action, it's seeking the circuit court to order, pursuant to the foreclosure law, a sale of the property to satisfy the amounts due to the bank. Well, in order to have a sale, you'd need a judgment. That's correct. So which judgment are you relying on? A new judgment under the 2018 action or the 2012 action? Well, what we are seeking in the 2018 action, ultimately, is for entry of a new judgment for foreclosure. That's why the bank filed the new 2018 foreclosure action. So the reason we're talking about a 2012 foreclosure is because of the merger doctrine? The reason we're talking about the 2012 case at all, Your Honor, is because in this 2018 action, Mr. Allen filed a Section 1401 petition to vacate your order entered in the 2012 foreclosure action. Right. And I thought that's what the issue was here, whether it should have been filed in the 2010 action or whether it should have been filed in the 2018 action. Yes, I agree, Your Honor. And as noted in the bank's brief, also noted by the Circuit Court, our contention is the petition was filed in the wrong case. With respect to the Allen's reply brief, they raise cases that say, well, a judgment or an order entered without jurisdiction, a void order, in other words, may be attacked at any time and in any court. The bank doesn't dispute those holdings, but those holdings do not address where a Section 1401 petition may be filed. What those holdings do address is what a party may do when a judgment is entered without jurisdiction if there's an ancillary action. For example, if a judgment creditor sought to foreclose a judgment lien, a judgment debtor could oppose the action by arguing the original judgment was entered without jurisdiction. That would be a valid collateral attack. But none of the cases cited by petitioners holds that a 1401 petition may be filed in one case to seek relief from a judgment entered in a separate matter. Petitioners rely on Price versus Philip Morris to advance their argument. But in Price, our Supreme Court held that a petition cannot be filed in the Circuit Court to challenge the holding of a reviewing court. In that case, the Supreme Court's holding. Price did not hold and does not stand for the proposition that a Section 214 and one petition can be filed in one case to obtain relief from a judgment entered in a wholly separate matter. Petitioners ask this court to stretch Sarkeesian and Price beyond what those cases actually held. By petitioners logic, if same proceeding meant only that the petition must be filed in the same Circuit Court, any party could seek relief from any judgment by filing a Section 1401 petition in any case whatsoever, so long as it was in that same Circuit Court. An absurdity would result, which is contrary to the express plain language of 1401, that petitions be filed in the same proceeding where the judgment was rendered. Thank you, Your Honor. Did you have a question, Justice Cates? No, I was just noting that Mr. Hoff needs to have his say. Uh, before we move, uh, onto Mr. Hoff, uh, Justice Barber, do you have any questions for Mr. Price? You've muted yourself. No, I do not. Thank you. Thank you, Justice. Uh, thank you, Mr. Price. Um, Mr. Hoff. Thank you, Your Honor. Go right ahead. Thank you. May it please the court, counsel, I am Assistant United States Attorney David Hoff, representing Defendant Appley of the United States of America. Unless this court has any specific questions for me, we will stand on our brief as filed. Thank you. So, Justice Cates, Justice Barber, do you have any questions for Mr. Hoff? No, thank you. Uh, no. I will say this, Mr. Price, you do have a couple minutes if there's any last, uh, you know, last information or argument you'd like to make. I don't think so. Thank you for the opportunity, Your Honor. I think I covered, um, everything. Unless the, uh, any of the justices have any further questions, I would be happy to try to answer. Anything from Justice Cates or Justice Barber? I guess I still don't understand how the bank has the authority under what section to go back, uh, four years later and vacate a judgment of foreclosure just because the bankruptcy court has, um, cured the default. To vacate it, that is. I can see where you can dismiss it, but I'm confused about the authority to vacate it. Well, there's a provision in the foreclosure law itself, section 1103, which indicates that a circuit court, when, uh, hearing a foreclosure matter, has authority during the entire pendency of the proceeding. And this is necessary because otherwise we would be stuck in a situation that we have right here. For instance, if after 30 days after entry of a foreclosure judgment, a borrower reinstated under the foreclosure law, and there was no mechanism for a foreclosing lender to go in and have the judgment vacated, then there would be a real problem because, uh, a borrower could then argue, well, you don't have a mortgage anymore because, uh, it merged into the judgment, but I reinstated so you can't proceed to sale on your existing action. And the bank would be, the bank would be stuck. How can you say that if you reinstate? If you reinstate the mortgage, then you have a new, a new mortgage, right? So the foreclosure law, there's nothing in 1103 that allows you to vacate. I can see where the circuit court can dismiss it. They can enforce a sale, et cetera. But to vacate the order is what I'm looking for. Is there any authority you found that allows them to do that? Uh, I have found no cases directly on point in that regard, Your Honor, beyond the statutory authority. Okay. The generalized statutory authority in 1103. 1103 of the foreclosure law. Yes. Right. Okay. Thank you, Justice Bowie. You're quite welcome. Um, well, thank you, Mr. Price. Uh, Justice Barberis, do you have any questions? Uh, not at this time. All right. Well, thank you. Um, Mr. Allen, go right ahead with your rebuttal. Uh, very brief, Your Honor. Uh, first, uh, with regard to the Chapter 13, uh, bankruptcy, uh, I was, John Allen was the only one involved. Marguerite was not involved. So really the Chapter 13 proceedings irrelevant to Marguerite Allen. Uh, and second is that the Chapter 13 provision was not a waiver of the It was the Chapter 13 proceeding was to avoid the premature sale of 38 Maywood drive. And, uh, the point was that as before the McGann case, uh, uh, it was thought that the Illinois mortgage foreclosure law was an NREM proceeding, but it is not an NREM proceeding. The Chapter 13 proceeding was, was really to stay the NREM aspects of the mortgage foreclosure judgment. It simply did not reflect the McGann case. And it had, and indeed, if it were, if it were reheard, it probably, uh, would have, would not have been necessary to go in to the Chapter 13 at all, because if there's no NREM proceeding, uh, under McGann, then the discharge, uh, John Allen, uh, would have, would have stayed, uh, the, uh, uh, sale of a property. Mr. Allen, it seems to me that you want to argue the 2012 vacature order, and yet you filed your two, 2-1401 in, um, the 2018 proceeding. So I'm not sure if, if this court finds that you should have filed in the 2010 proceeding, I'm not sure how we've teed up this issue that you want to argue. Well, if, if you say, uh, the court rules that we had to file the 2012 proceeding, it's not open. Uh, it's, it was dismissed by the bank and it's, uh, it was final dismissal and there's no way that we can now reopen that I'm aware of, uh, reopen that to be the host for this, uh, 1401 petition. So that's a practice. You don't think you can file a motion to reopen and, and file a 2-1401? I don't think we could reopen the 2012 case. No, I don't know how it would be done. And that's because it was dismissed under the vacature order? It was, no, the vacature had nothing to do with the dismissal. The dismissal was based on 1103, 15 to 1103, which gave the court continuing, uh, authority to dispose of all matters arising out of the mortgage foreclosure. Obviously, if the bank wants to withdraw its own case and dismiss it, the 2012 case, uh, court had authority, continuing authority to do just that. But that's unrelated to the vacature motion. It happened to be in the same sentence in the court's order, but there are two separate I was going to say, I thought that the court both vacated it and dismissed the case. Those are two separate orders, even though it's in one sentence, your honor. One was to vacate the vacature, to vacate the judgment order. And the second was, was to dismiss the action after it, the mortgage foreclosure judgment was vacated, but it was two orders in one sentence. Did you file an objection to the bank's motion to vacate and dismiss? No, we did not, your honor. Okay. That's all I have. Thank you. Thank you very much, your honor. Well, Mr. Allen, does that complete your rebuttal? I believe it does, your honor. Thank you very much. Well, thank you. Well, before we leave this case, I'll ask one more time, Justice Cates or Justice Barberis, do you have any final questions? No, thank you. No, thank you. Well, uh, counsel, obviously we will take the matter under advisement and issue an order